PARIENTE, J.,
concurring.
Although this case has produced several different opinions as to the proper discipline to impose, it is important to note that the Court unanimously condemns the conduct of Judge Kinsey during her 1998 election campaign. Because of the view of Justice Wells that this case only calls for a public reprimand, and the view of Justice Lewis that the conduct of Judge Kinsey during her election campaign is sufficiently egregious to warrant her removal, I write to explain why I agree with the majority’s decision to approve the recommendation of the Judicial Qualifications Commission as to discipline.
In Florida, the Code of Judicial Conduct attempts to strike a balance between the need to inform the electorate about the qualifications of judicial candidates and the need for judges to maintain the appearance of impartiality. Indeed, since our Code was amended in 1994 to remove the “pledge and promise” clause — the very clause found to be unconstitutional in Republican Party of Minnesota v. White, 536 U.S. 765, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) — hundreds of candidates campaigning for judgeships have successfully balanced the competing interests inherent in judicial elections without making statements that impugn their impartiality, cater to a particular group, or make misrepresentations as to their opponents’ qualifications and track records.
In the past several years, we have had three notable cases of judicial candidates *95 who stepped over the line during elections: In re Alley, 699 So.2d 1369 (Fla.1997), In re McMillan, 797 So.2d 560 (Fla.2001), and now this case. In the case of In re Alley there appears no doubt that a sanction greater than a public reprimand would have been imposed but for the fact that at that time the constitution prevented the Court from increasing the proposed sanction recommended by the JQC.[10] See 699 So.2d at 1370. In McMillan, the respondent not only committed serious violations while campaigning but also, while sitting as a judge, committed additional violations that called into question his continued fitness to hold office. See 797 So.2d at 573.
Justice Lewis makes a strong case as to why Judge Kinsey’s conduct was intolerable. He asserts that if the conduct was as egregious as the majority depicts, then removal is the only alternative. He fears that this Court will convey the message that, if willing to pay a fine, a candidate can buy an election.
Admittedly, I have wrestled with the concept of a fine, albeit a substantial one, as the appropriate sanction in this case. However, I have reached the conclusion that we should follow the recommendation of the JQC for three primary reasons.
First, the options now available to this Court to impose sanctions for judicial violations of the Code range from a public reprimand to removal from office. Constitutionally authorized sanctions such as the imposition of a fine and the suspension from office fall between those two extremes. Because the constitution has only recently been amended to allow for the imposition of other sanctions,[11] we have not developed a body of case law as to when a fine, a suspension, or a combination of authorized penalties should be imposed. However, a suspension, while symbolically a stronger sanction than a fine, has the unavoidable consequence of also creating a hardship for the judicial system and the citizens of a particular circuit by creating a vacancy in the judiciary for a period of time. Thus, although imposing a fine may not always be an entirely satisfactory method for redressing the harm that has resulted from an election violation, in my view, a fine, coupled with a public reprimand, is appropriate in certain circumstances.[12]
Second, although this Court has the ultimate responsibility under the constitution for the choice of sanction, the JQC is the body that the constitution has created to monitor the conduct of judges. While we have not hesitated to disapprove recommendations that we considered too lenient, most recently in the case of In re Rodriguez, 829 So.2d 857 (Fla.2002),[13] the rec *96 ommendations of the JQC as to discipline have persuasive force and should be given great weight. See In re Miller, 644 So.2d 75, 78 (Fla.1994). Indeed, while this Court bears the ultimate responsibility for discipline, in my view a certain amount of deference is appropriate considering the JQC’s considerable expertise. I thus rely on both the JQC’s recommendations and its stated explanation for the recommended sanction:
The Panel has no hesitancy in recommending that she be publicly reprimanded by this Court but believes leaving her in office with no further penalty is entirely inappropriate. Under the current Constitution, Judge Kinsey is subject to removal or further penalty in the form of a fíne. The Hearing Panel has thoroughly deliberated this issue and concludes that the penalty imposed here must be sufficient to strongly discourage others from violating the Canons governing contested elections.
At least one member of this Panel strongly urged Judge Kinsey’s removal. This Panel member concurs in and would apply the statement of this Court in Alley that: “We find it difficult to allow one guilty of such egregious conduct to retain the benefits of these violations and remain in office.”
However, the conduct in Alley was, in the view of the majority of the Hearing Panel, significantly more egregious than the conduct involved in the present case. Judge Alley admitted to intentionally misrepresenting the basic qualifications of her incumbent opponent and in intentionally misrepresenting her own qualifications. She altered a published newspaper to make it appear she had been endorsed by the paper which had actually endorsed her opponent. She intentionally injected party politics into the nonpartisan race. Judge Kinsey’s misconduct did not rise to this level.
Despite the less egregious nature of the violations, Judge Kinsey must be punished for her conduct and such conduct simply cannot be tolerated in future elections. While a reprimand alone is insufficient, there was no evidence that Judge Kinsey is presently unfit to hold office other than her misconduct involved in winning the election. Although such misconduct can rise to the level of present unfitness as is required for removal under Article V, § 12(a)(1), here, the Panel finds the conduct does not warrant removal. Indeed, the Investigative Panel made no direct argument to this Panel that Judge Kinsey should be removed. The recommendation of a penalty was left entirely to the Hearing Panel.
Thus under all of the circumstances including the very favorable character evidence, and after due consideration, the Hearing Panel by a vote of at least 4 members recommends that Judge Kinsey, be publicly reprimanded and fined the substantial sum of $50,000.00 plus costs of these proceedings.
Finally, and perhaps most importantly to me, Judge Kinsey has now served more than four years since her 1998 election and there has been no suggestion that she has acted other than impartially to all litigants since her election as a judge. In my view, the fact that there has been no suggestion that she has conducted herself in a manner other than in accord with the Code of Judicial Conduct substantially differentiates this case from other cases in which we have removed judges from office.
For example, in McMillan, while election conduct charges were pending in this Court, additional charges were filed *97 against Judge McMillan involving actual cases in which Judge McMillan served as a judge. See McMillan, 797 So.2d at 564.[14] Because Judge Kinsey has, for four years now, apparently conducted herself in a manner befitting an impartial arbiter of the law, I am compelled to concur with the JQC’s finding that there is “no evidence that Judge Kinsey is presently unfit to hold office,” and to support the JQC’s recommendation as to the appropriate discipline.
Based on these considerations I conclude that the substantial fine and public reprimand do not soil the judiciary, but rather serve as a forceful warning that the tactics in which Judge Kinsey deliberately engaged during the election will not be tolerated by this Court. I do hope that Judge Kinsey, the public, and future judicial candidates receive the correct message — not that justice is for sale or that the ends justify the means, but that to engage in this type of campaign tactic imperils the very foundation of our justice system.

.See art. V, § 12(f), Fla. Const. (1995). Pri- or to the adoption of the 1996 amendment, the only sanctions available to the Supreme Court against a sitting judge were public reprimand and removal. Also, prior to the 1996 amendment, the Supreme Court could accept, reject, or impose a lesser sanction against a judge. However, the Court was not authorized to increase the proposed sanction of a public reprimand. See In re Alley, 699 So.2d at 1370 n. 1.

.See art. V, § 12(a), Fla. Const. (amended in 1996 to define "discipline” as including "reprimand, fine, suspension with or without pay, and lawyer discipline”).

. Cf. Pasquale v. Fla. Elections Comm’n, 759 So.2d 23 (Fla. 4th DCA 2000) (affirming fine for failing to report value of a campaign contribution); Ferre v. State ex rel. Reno, 478 So.2d 1077 (Fla. 3d DCA 1985) (affirming $35,000 fine on mayor who accepted improper post-election campaign contributions), approved, 494 So.2d 214 (Fla.1986); see also § 106.265, Fla. Stat (2002) (authorizing imposition of fine of up to $1000 for each count of campaign financing violation).

. In that case, we rejected the initial JQC recommendation, and subsequently approved a more significant sanction, which included a *96 suspension, a fine, and a public reprimand. See Rodriguez, 829 So.2d at 858-61.

. See also In re Graziano, 696 So.2d 744 (Fla.1997) (affirming JQC’s recommendation that Judge Graziano be removed from office for actions that constituted "rank misuse of respondent’s judicial office”).